12-4524-bk
DelGreco v. DLA Piper

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of September, two thousand thirteen.

Present:
> ROBERT A. KATZMANN,
> > *Chief Judge*,
> DENNIS JACOBS,
> ROSEMARY S. POOLER,
> > *Circuit Judge*s.

_____

IN RE: JOSEPH DELGRECO & COMPANY, INC.,

> *Debtor*.

_____

JOSEPH DELGRECO & COMPANY, INC.,

> *Plaintiff-Appellant*,

> v.                                                          No.  12-4524-bk

DLA PIPER L.L.P. (US),

> *Defendant-Appellee*.

_____

For Plaintiff-Appellant: HARTLEY TODD BERNSTEIN, Bernstein Cherney LLP, New York, NY

For Defendant-Appellee: JAMES P. ULWICK, Kramon & Graham, P.A., Baltimore, MD (Jean E. Lewis, Kramon & Graham, P.A., Jeffrey Schreiber, Howard Davis, Meister Seelig & Fein LLP, New York, NY, *on the brief*)

Appeal from the United States District Court for the Southern District of New York (Engelmayer, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiff-Appellant Joseph DelGreco & Co. ("JDG") appeals from a judgment entered on October 2, 2012 by the United States District Court for the Southern District of New York (Engelmayer, *J.*). That judgment enforced a Memorandum and Order dated October 1, 2012, which granted the motion of Defendant-Appellee DLA Piper L.L.P. (US) ("DLA Piper") for summary judgment on all of JDG's claims for legal malpractice. *See Joseph DelGreco & Co. v. DLA Piper L.L.P. (U.S.)*, 899 F. Supp. 2d 268 (S.D.N.Y. 2012). On appeal, JDG argues that a reasonable jury could have concluded that DLA Piper's malpractice caused losses that JDG suffered, that the district court erred by requiring JDG to support certain claims with expert testimony, and that the district court ignored JDG's claim that DLA Piper committed malpractice by representing JDG despite conflicts of interest. We assume the parties' familiarity with the relevant facts, the procedural history, and the issues presented for review.

"We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005). "We will

2

affirm the judgment only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law." *Id.*

"In a diversity action based on attorney malpractice, state substantive law, here that of New York, applies." *Nordwind v. Rowland*, 584 F.3d 420, 429 (2d Cir. 2009) (quoting *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008)). "To prevail on a claim for legal malpractice under New York law, a plaintiff must establish: '(1) attorney negligence; (2) which is the proximate cause of a loss; and (3) actual damages.'" *Id.* (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (emphasis omitted)). "To establish the elements of proximate cause and damages, a plaintiff must show that but for the defendant's negligence, he or she would have prevailed in the underlying action or would not have sustained any damages." *Allianz*, 416 F.3d at 118 (quoting *Aversa v. Safran*, 757 N.Y.S.2d 573, 574 (2d Dep't 2003)). "The courts generally require malpractice plaintiffs to 'proffer expert opinion evidence on the duty of care to meet their burden of proof in opposition to a properly supported summary judgment motion.'" *Hatfield v. Herz*, 109 F. Supp. 2d 174, 179 (S.D.N.Y. 2000) (quoting *Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo*, 686 N.Y.S.2d 404, 405-06 (1st Dep't 1999)). Nonetheless, "the requirement that plaintiff come forward with expert evidence on the professional's duty of care may be dispensed with where ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service." *Id.* at 179 (quoting *Estate of Nevelson*, 686 N.Y.S.2d at 405-06 (internal quotation marks omitted)).

On appeal, JDG focuses entirely on three of its many allegations of malpractice: (1) the claim that DLA Piper negligently failed to ensure that JDG made a $767 interest payment required by a contract; (2) the claim that DLA Piper improperly withdrew as JDG's counsel in a

3

later arbitration; and (3) the claim that DLA Piper committed malpractice by representing JDG in the arbitration despite conflicts of interest. JDG provided expert testimony in support of only the first claim. With respect to that claim, the district court correctly concluded that no reasonable jury could find that JDG's failure to make the $767 payment caused the damages it suffered at arbitration.[1] As the district court persuasively reasoned, JDG had, independently of DLA Piper's alleged negligence, committed "abundant other . . . and more momentous" breaches of the exact same contract. *Joseph DelGreco & Co.*, 899 F. Supp. 2d at 283. Specifically, the evidence showed that JDG had diverted a shipment of goods from the contractually-specified warehouse, had failed to pay over $200,000 in invoices due under the contract, had misrepresented the registration status of its trademark, had improperly refused to permit analysis of its books and records, and had belatedly made five other interest payments required by the contract without paying the accompanying late fees.[2] While JDG argues that it could have cured those other breaches, and that its supplier had in fact accepted the five tardy interest payments, it has not explained why, unlike the other interest payments, it could not have belatedly cured its failure to

---

[1] Relying on *Barnett v. Schwartz*, 848 N.Y.S.2d 663 (2d Dep't 2007), JDG initially claimed that the district court erred by requiring it to show "but for" rather than "proximate" causation. However, *Barnett* recognized that:

> In the main, the cases from the Court of Appeals, including the most recent, do not expressly require that the negligence be either "the" or "a" proximate cause of damages, but require proof that, "but for" the negligence of the defendant-attorney, the plaintiff-client would have prevailed in the underlying action (in a classic lawsuit-within-a-lawsuit scenario) or would not have incurred damages (in an action alleging negligent advice, etc.).

*Id.* at 668. In any event, JDG conceded at oral argument that it was required to prove but-for causation.

[2] While this conduct breached a variety of agreements between JDG and its supplier, the contract at issue in this case permitted JDG's supplier to declare default and accelerate any available remedies in the event that JDG breached or terminated those other agreements.

make the interest payment on which it rests its malpractice claim—a payment of $767 in a contract involving more than $1,000,000. Moreover, JDG ignores the fact that the arbitrator apparently disregarded the $767 payment, instead finding that JDG, by litigating against rather than cooperating with its supplier, had not cured its other breaches.[3] Accordingly, we affirm the district court's decision.

Turning to JDG's claim based on DLA Piper's withdrawal as counsel, we agree with the district court that JDG could not prevail on this claim without providing expert testimony. Evidence in the record shows that DLA Piper communicated with JDG about its failures to pay attorney's fees for months before withdrawing, that DLA Piper twice helped JDG apply, albeit unsuccessfully, for litigation financing, that JDG owed DLA Piper $275,000 in fees at the time of DLA Piper's withdrawal, that the arbitration would have cost another $605,000, and that JDG apparently consented to withdrawal. A juror's ordinary experience would not permit her to determine whether a lawyer must incur $605,000 in expenses by continuing to represent a client who, after repeated discussions, has already failed to pay $275,000 in fees. Instead, such a determination requires expert interpretation of complicated rules of professional conduct. *See, e.g.*, N.Y. Rules of Prof'l Conduct R. 1.16(c)(5) (permitting withdrawal where "the client deliberately disregards an agreement or obligation to the lawyer as to expenses or fees"). Accordingly, we affirm.

---

[3] Specifically, the arbitrator awarded default interest beginning on September 5, 2008, nearly a year after JDG failed to make the $767 payment, but only thirty days after JDG moved to compel its supplier to arbitration. Under an agreement between JDG and its supplier, if a breach remained uncured for thirty days, the supplier could terminate the agreement, thereby accelerating all remedies available under any contract between the parties, including the right to default interest. Although JDG argues that the arbitrator did not specify his reasoning, it offers no support for the dubious proposition that a reasonable jury, and thus a court considering a motion for summary judgment, could not consider an arbitrator's conclusions, drawing the inferences that those conclusions compel. Indeed, because the arbitration award is the central harm that JDG suffered, the question of what caused the arbitrator to make that award is the primary factual issue in this case.

Finally, JDG argues that the district court ignored its claim that DLA Piper had committed malpractice by representing JDG despite conflicts of interest. Our review of JDG's complaint reveals no such claim. But even assuming JDG had pleaded a claim based on DLA Piper's alleged conflicts of interest, it would have needed to produce expert testimony to overcome a motion for summary judgment. *See Hatfield*, 109 F. Supp. 2d at 179; N.Y. Rules of Prof'l Conduct R. 1.7(a)(2) (providing that an attorney may not represent a client when "there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests"). Because JDG has produced no such testimony, we affirm. *See Adirondack Transit Lines, Inc. v. United Trans. Union, Local 1582*, 305 F.3d 82, 88 (2d Cir. 2002) ("[W]e are entitled to affirm the district court on any ground for which there is support in the record, even if not adopted by the district court").

We have considered JDG's remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK