352 F.3d 73
 John L. SNIADO, III, on behalf of himself and all others similarly situated, Plaintiff-Appellant,
v.
BANK AUSTRIA AG, Raiffeisen Zentralbank Österreich AG, Erste Bank Der Österreichisechen Sparkassen AG, Österreichische Postsparkasse, Raiffeisenlandes-Bank Northern Austria-Vienna, Northern Austria Landesbank Hypothekenbank, Österreichische Volksbanken AG, ABN Amro Bank N.V., GWK Bank N.V., Fortis N.V., ING Bank N.V., Banca di Roma SpA, Banca Nazionale del la Voro SpA, Banca Intesta, Deutsche Bank AG, Unicredito Italiano SpA, Defendants-Appellees.
Bank Für Arbeit Und Wirthschaft AG, Sanpaolo IMI SpA, Defendants.
 Docket No. 02-7012.
 United States Court of Appeals, Second Circuit.
 August Term, 2003.
 Argued: October 24, 2003.
 Decided: November 21, 2003.
 
 COPYRIGHT MATERIAL OMITTED Barbara Hart, Bernard Persky, Goodkind, Labaton Rudoff & Sucharow LLP, New York, N.Y., Douglas G. Thompson, Mila Bartos, Finkelstein, Thompson & Loughran, Washington, D.C., Marvin A. Miller, Jennifer Winter Sprengel, Miller Faucher & Cafferty LLP, Chicago, IL, Nicholas Chimicles, James Malone, Jr., Chimicles & Tikellis LLP, Haverford, PA, for Plaintiff-Appellant.
 John H. Shenefield, Johnathan M. Rich, J. Clayton Everett Jr., Morgan, Lewis & Bockius LLP, Washington, D.C., for Bank Austria AG, Alan M. Unger, James D. Arden, Sidley Austin Brown & Wood, New York, N.Y. for Erste Bank der Österreichischen Sparkssen AG, James W. Lowe, Leon B. Greenfield, Wilmer, Cutler & Pickering, Washington, D.C., and Paul A. Engelmayer, for Raiffeisin Zentralbank Österreich AG, Raiffeisenlandesbank Northern Austria-Vienna AG, Northern Austria Landesbank-Hypothekenbank AG, and Österreichische Volksbanken AG, Dennis P. Orr, Hector Gonzalez, Sanford I. Weisburst, Mayer, Brown, Rowe & Maw, New York, N.Y., for ABN Amro Bank, N.V., Robert A. Horowitz, Karen Y. Bitar, Greenberg Traurig LLP, New York, N.Y., for Fortis N.V. and GWK Bank N.V., Michael S. Shuster, Johnathan Beemer, White & Case, New York, N.Y., for Banca di Roma SpA, Jerome S. Fortinsky, Brian H. Polovoy, Shearman & Sterling LLP, for ING Bank N.V., Gordon B. Nash, Jr., Steven S. Shonder, Gardner Carton & Douglas, Chicago, IL, for Banca Nazionale del Lavoro, SpA, Richard A. Martin, Richard S. Goldstein, Heller Ehrman White & McAuliffe, New York, N.Y., for Banca Intesa, SpA, Richard L. Mattiaccio, Pavia & Hartcourt LLP, New York, N.Y., for Unicredito Italiano SpA, Jeffrey Barist, Charles Westland, Milbank, Tweed, Hadley & McCloy, New York, N.Y., for Deutsche Bank AG, Defendants-Appellees.
 Before: McLAUGHLIN, CABRANES, and SACK, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 Appellant John L. Sniado, III appeals from a decision of the United States District Court for the Southern District of New York (Schwartz, J.) dismissing his putative class action pursuant to Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction under § 6a(2) of the Foreign Trade Antitrust Improvements Act ("FTAIA"). See 15 U.S.C. § 6a. In dismissing under § 6a(2), the district court assumed arguendo that Sniado satisfied the jurisdictional requirements of § 6a(1) and stated sua sponte that, even if Sniado had satisfied the jurisdictional requirements of the FTAIA, he would lack standing to prosecute this antitrust claim.
 
 
 2
 We vacate the district court's dismissal under § 6a(2) and remand for the court to determine whether Sniado satisfies the jurisdictional requirements of § 6a(1) and has standing. We also grant Sniado leave to file a motion to obtain permission from the district court to replead pursuant to Fed.R.Civ.P. 15(a).
 
 BACKGROUND
 
 3
 During the 1980s, plaintiff-appellant John L. Sniado, III, a resident of New York, regularly traveled to Europe, where he exchanged American dollars for Eurocurrencies at various European banks.
 
 
 4
 In April 1997, Gerhard Praschak, the head of Kontrollbank in Austria, committed suicide. He confessed, in a suicide note, that Austria's banking system was rife with price-fixing of exchange rate fees for Euro-currencies.
 
 
 5
 In September 1999, the European Commission ("Commission") issued "statements of objection" to eight Austrian banks, seven of which are defendants-appellees in this action. In these statements, the Commission said it had evidence that the defendants-appellees fixed currency exchange fees. The Commission conducted a wide-scale antitrust investigation that potentially implicated over 120 European banks in Austria, Belgium, France, Germany, Holland, Ireland, Italy, Portugal, and Spain.
 
 
 6
 Having discovered that he was a victim of this alleged European antitrust conspiracy, Sniado filed a putative class action on behalf of all persons and businesses in the United States who had paid foreign exchange fees at "supra-competitive" rates. See Sniado v. Bank Austria AG, 174 F.Supp.2d. 159 (S.D.N.Y.2001) (Schwartz, J.). He alleged violations of the Sherman Act, 15 U.S.C. § 1, and the Clayton Act, 15 U.S.C. § 15.
 
 
 7
 The defendants are European banks, most of which are alleged to have offices in the United States. The Austrian banks include Bank Austria AG, Erste Bank der Österreichisechen Sparkassen AG, Raiffeisen Zentralbank Österreich AG, Bank für Arbeit und Wirtschaft AG, Österreichische Postsparkasse, Raiffeisenlandesbank Northern Austria-Vienna, Northern Austria Landesbank-Hypothekenbank, and Österreichische Volksbanken AG. The Dutch banks include ABN AMRO Bank, N.V., ING Bank N.V., GWK Bank N.V., and Fortis N.V. The Italian Banks include Banca Intesta, Banca di Roma SpA, Banca Nazionale del Lavoro SpA, UniCredito Italiano SpA, and Sanpaolo IMI SpA. The solitary German bank is Deutsche Bank AG.
 
 
 8
 Sniado claims that, while in Europe, he paid what he called supra-competitive foreign exchange fees to defendants, and he now seeks to recover his financial losses. He also alleges that the defendants have "exchanged millions of dollars of European currency in the United States and in Europe" for supra-competitive fees.
 
 
 9
 In the district court, certain defendants moved under Fed.R.Civ.P. 12(b)(1) to dismiss for lack of subject matter jurisdiction pursuant to the FTAIA, and under Fed. R.Civ.P. 12(b)(6) to dismiss for failure to state a claim. Sniado expressed his intention to amend his complaint and, in the meantime, the defendants before the court agreed to withdraw their motion to dismiss without prejudice.
 
 
 10
 After Sniado filed his amended complaint, the defendants refiled their motion to dismiss. They were joined, in this motion, by additional defendants who had subsequently been served with the amended complaint. Certain defendants also moved to dismiss for lack of personal jurisdiction. However, the court postponed briefing on personal jurisdiction until the issue of subject matter jurisdiction was resolved. Sniado opposed the motion to dismiss for lack of subject matter jurisdiction and sought leave to conduct discovery relating to subject matter jurisdiction.
 
 
 11
 After oral argument on the motion to dismiss, Sniado asked Judge Schwartz to defer ruling on subject matter jurisdiction until this Court passed on Kruman v. Christie's Int'l PLC, 129 F.Supp.2d 620 (S.D.N.Y.2001) — which was on appeal at the time — and until the United States Supreme Court decided whether to grant certiorari on a Fifth Circuit case, Den Norske Stats Oljeselskap As v. HeereMac Vof, 241 F.3d 420 (5th Cir.2001). Both cases addressed the same issue decided by the district court below: whether, under § 6a(2) of the FTAIA, defendants' conduct must give rise to "a" claim, generally, or to "the" specific antitrust claim of the plaintiff.
 
 
 12
 Because defendants presented a facial challenge to Sniado's amended complaint, the court denied Sniado's discovery motion. The district court also denied Sniado's motion for a stay and dismissed his complaint.
 
 
 13
 To establish jurisdiction under the FTAIA, a plaintiff must satisfy the requirements of both §§ 6a(1) and 6a(2). Failure to plead either one is fatal to jurisdiction. In accordance with "the weight of authority," including notably Kruman, 129 F.Supp.2d 620 (S.D.N.Y.2001), the district court construed § 6a(2) of the FTAIA to preclude subject matter jurisdiction over Sniado's claim. (The court willingly assumed, without deciding, that Sniado would have satisfied the jurisdictional requirements of § 6a(1)). Although the issue was not raised by the defendants, the court also suggested that Sniado would lack standing to prosecute this antitrust action.
 
 
 14
 Thereafter, the Supreme Court denied certiorari in Den Norske. See 534 U.S. 1127, 122 S.Ct. 1059, 151 L.Ed.2d 967 (2002). Subsequently, we reviewed Kruman, the district court decision upon which Judge Schwartz relied. See 284 F.3d 384 (2d Cir.2002).
 
 
 15
 Sniado now appeals.
 
 DISCUSSION
 
 16
 We review de novo the district court's conclusion that Sniado's amended complaint does not, on its face, allege subject matter jurisdiction under the FTAIA. See Kruman, 284 F.3d at 390.
 
 The FTAIA provides that:
 
 17
 Sections 1 to 7 of this title [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless —
 
 
 18
 (1) such conduct has a direct, substantial, and reasonably foreseeable effect —
 
 
 19
 (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
 
 
 20
 (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
 
 
 21
 (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.
 
 
 22
 If sections 1 to 7 of this title apply to such conduct only because of the operation of paragraph (1)(B), then sections 1 to 7 of this title shall apply to such conduct only for injury to export business in the United States.
 
 
 23
 15 U.S.C. § 6a.
 
 
 24
 The two FTAIA issues on appeal are: (1) whether, under subdivision 1, supra, the defendants' alleged conduct has a "direct, substantial, and reasonably foreseeable" effect on domestic commerce; and (2) whether, under subdivision 2, supra, "such effect gives rise to a claim." In the interest of simplicity and organizational convenience, we address these issues in reverse order.
 
 I. Section 6a(2)
 
 25
 In the district court, the parties disagreed on the proper scope of § 6a(2), which requires that the effect of the banks' conduct on domestic commerce "give rise[] to a claim" under the relevant antitrust provisions. See 15 U.S.C. § 6a(2) (emphasis added). Despite use of the generic term "a claim," the banks argued that plaintiff must allege that their conduct gave rise to his claim. The district court agreed based on Kruman v. Christie's Int'l PLC, 129 F.Supp.2d 620 (S.D.N.Y. 2001), and authority in other circuits. See Sniado v. Bank Austria AG, 174 F.Supp.2d at 166 (citing cases).
 
 
 26
 After Judge Schwartz's decision in this case, however, we decided Kruman, and held that the "plain meaning" of the statute precluded the construction of § 6a(2) advanced by the defendants and adopted by the district court in this case. See 284 F.3d at 400 ("[A]dopting the defendants' interpretation would mean rewriting the statute to replace the word `a' . . . with the words `the plaintiff's,' resulting in a new subsection 2 that requires that the `effect give[] rise to the plaintiff's claim." (emphasis in original)).
 
 
 27
 Accordingly, we vacate the district court's dismissal of Sniado's complaint under § 6a(2).
 
 II. Section 6a(1)
 
 28
 In their appellate brief, the defendants concede that Kruman— the current law of this Circuit — controverts their position on § 6a(2). They respond that we should still affirm the district court's decision because Sniado failed to allege that the banks' anticompetitive conduct had "a direct, substantial, and reasonably foreseeable effect" on domestic commerce under § 6a(1). The district court dismissed Sniado's complaint under § 6a(2), and therefore assumed, without deciding, that Sniado would satisfy the requirements of § 6a(1). See 174 F.Supp.2d at 165-66. Because we vacate on the § 6a(2) issue, we remand for the district court to decide in the first instance whether Sniado's complaint complies with § 6a(1).
 
 
 29
 In relation to § 6a(1), the district court speculated on two alternative interpretations of "conduct" under the FTAIA: "narrow" and "broad." See 174 F.Supp.2d at 164-66. Under the narrow interpretation, the "conduct" at issue here would be "the charging of supra-competitive fees in Europe" (the acts that harmed Sniado). Id. at 164. The district court suggested that, under this standard, "dismissal for lack of subject matter jurisdiction would be required." Id. at 165.
 
 
 30
 Under the broad interpretation, on the other hand, the conduct in question would be "the entire alleged conspiracy to fix fees for exchanges of European currencies in Europe and the United States." Id. Under this standard, the court indicated that Sniado "would have alleged conduct that directly and reasonably foreseeably affected domestic commerce." Id. After noting that the parties failed to address whether the effect, if any, was "substantial," the court assumed that substantiality was adequately alleged. Id. at 166.
 
 
 31
 In Kruman, we explained that "conduct" refers to "acts that are illegal under the Sherman Act," not to the specific acts that caused the plaintiff injury. See 284 F.3d at 398-99 ("[T]he `conduct' in this case was not the imposition of high prices pursuant to an illicit agreement, but the alleged agreement by the defendants to fix prices in foreign auction markets."). The narrow interpretation of "conduct" would be inconsistent with our holding in Kruman. Therefore, on remand, the district court should apply the broad interpretation of "conduct" under § 6a(1).
 
 III. Standing
 
 32
 The district court intimated sua sponte and in dicta that, even if jurisdiction were established, Sniado would lack standing. See 174 F.Supp.2d at 165. On appeal, the defendants argue that lack of standing provides yet another basis to affirm dismissal of Sniado's complaint. For the reasons stated below, we remand for the district court to decide the standing issue in the first instance.
 
 
 33
 The appellees are correct that we are entitled to affirm the judgment on any ground with support in the record, even one raised for the first time on appeal. See, e.g., Adirondack Transit Lines, Inc. v. United Transp. Union, 305 F.3d 82, 88 (2d Cir.2002). A federal appellate court has "discretion to consider" antitrust standing in the first instance as "prudence dictates." See Thomas v. Network Solutions Inc., 176 F.3d 500, 509-10 (D.C.Cir.1999); see also Pinney Dock & Transp. Co. v. Penn. Cent. Corp., 838 F.2d 1445, 1461 (6th Cir.1988). In Kruman, however, we reversed a dismissal of the plaintiff's complaint under § 6a(2) of the FTAIA and remanded the issue of standing for the district court to decide in the first instance. See 284 F.3d at 403. Because, in this case, we are remanding for the district court to determine whether Sniado alleges jurisdiction under § 6a(1), we exercise our discretion to remand the standing issue as well.
 
 IV. Leave to File Motion to Replead
 
 34
 In light of Kruman, we also grant Sniado permission to file a motion seeking to replead pursuant to Fed.R.Civ.P. 15(a). We express no view, however, that would require the district court to grant such a motion. Therefore, on remand, the court may decide the issues on the basis of Sniado's amended complaint or a second amended complaint, as it deems appropriate.
 
 CONCLUSION
 
 35
 For the foregoing reasons, we vacate the district court's decision and remand for further proceedings consistent with this opinion.